Ms. Reese, thank you very much for also taking this matter up, pro bono, by the USC Immigration Clinic. Thank you. Thank you. So, Jean Reese, on behalf of Mr. Pedram Zehtabi, I'll reserve 5 minutes for rebuttal and I'll keep an eye on the clock. The BIA was, I'm going to start with the nexus issue. The BIA was incorrect in determining that Mr. Zehtabi failed to provide a nexus to the political opinion or to a particular social group, individuals who have acted against a high-ranking besieged member and therefore against the Supreme Leader. There is substantial evidence that a central reason for Mr. Zehtabi's persecution and feared future persecution is his political opinion, and I'll focus on political opinion first. According to the U.S. State Department report, Iran is an authoritative, theocratic regime that is led by the Supreme Leader. The besieged is a paramilitary group under the Islamic Revolutionary Guard Corps. Country conditions established that the besiege is corrupt has been involved in mass human rights, disappearances of protesters, and murders. This course has also held that refusal to engage in government corruption is an expression of political opinion. Here Mr. Zehtabi refused to falsify the size of Arash's land in order to participate in a fraudulent scheme with a bank institution. Arash is a commander in the besieged paramilitary. I think the most direct evidence of the nexus here to a political opinion is that Arash had two besieged intelligence agents go to Mr. Zehtabi's home, identify themselves as the besieged, bring him to the besieged base, interrogated him for four hours, and state that they were going to interrogate him about a political protest that happened in 2019. According to the U.S. State Department report, over 300 people were killed as political dissidents as part of this 2019. Page 400 of the record, again, is this direct evidence where Arash says, you'll be accused you're acting against the government and you will face criminal charges and be destroyed so that your family can never find you. The only way Mr. Zehtabi was able to leave was to agree to retract his report regarding the land size of the property. But how can we say the record compels the conclusion that this was a central reason versus this was a corrupt official who had financial interest and he was abusing his power to promote his financial interest? I think here you have the context of the entire record where the besiege has been reported by the U.S. Institute of Peace in their Iran primer, that they have their corrupt corporation that has accumulated money through interest-free financial institutions. Besieged officials have been sanctioned against the U.S. Besieged agents other than Arash, the landowner, have been involved in the threats against Mr. Zehtabi. So we had two people beat him up. We had agents go to his house, bring him to an interrogation room. So this is involving more than just a private individual and using the resources of the office. Is there any evidence that Mr. Arash knew that Mr. Zehtabi had reported the incident to the police or to Mr. Zehtabi's manager? There's not, right? Well the land was never changed to what Arash wanted and he reported twice to his institution the actual, I think it was only 500 square meters as opposed to the 8,000 square meters. So that's evidence that Arash was aware that he reported this. He didn't report the corruption, right? He reported the correct square footage of the property is what he reported. Okay, too many pronouns. What Mr. Zehtabi reported was a correct square footage of the property, not what Mr. Arash falsely wanted. So I guess my question is, Mr. Arash didn't know that Mr. Zehtabi was a whistleblower because he didn't know, right? Well, there is testimony that after the second visit that Mr. Zehtabi did tell the bank supervisor about Arash wanting him to accept a bribe. Right, but Mr. Arash didn't know that. There is not evidence that Mr. Arash knew that that conversation took place. But there is evidence that the besiege is stronger than the police. There's evidence that Mr. Zehtabi reported everything to the police about the whole scheme. And there's also the statements made to him that you're going against the government. So I think that that takes it out of, I think it puts it in the whistleblower situation. And that's what the board, the board's basis for denial wasn't that this wasn't a whistleblower, cognizable whistleblower political opinion. It was just that there was only a personal financial interest. I think also this court has recognized mixed motives don't negate a legitimate nexus based on political opinion. So there was this interest in getting money based off the false loan scheme. But there was also political opinion here that he was going against the government. Where is there any evidence in the record that Mr. Arash told Mr. Zehtabi you're going against the government? I don't recall that. It's page 400 in Mr. Zehtabi's declaration, page 400 of the record. He says that he's being interrogated about being part of the protest. Mr. Zehtabi's denying it. And he says we're going to- But that's the rising gas price protest, right? That's nothing to do with the property that Mr. Arash wants to be falsely inflated, right? Your Honor, I think a reasonable reading of the record is that he was brought in because of the landowner and was also now being linked with a protest and being a political dissident and being against the government. So I think that because this is being raised and there's evidence of protesters being disappeared, and again, this is a totalitarian state where there are religious police that have the authority to execute people based on crimes such as corruption on earth, going against the government. So are you saying that they were using his alleged participation in the protest years before against him now because he wouldn't go along with the land scheme? I think that, yes, I think they were identifying him as going against the government by not going in the land scheme, and this was part of the threats of not. The only way he can get out of these criminal charges is to fix the land issue, and that was the only way he was allowed to leave. So I think that based on substantial evidence, the BIA was wrong to say this is purely financial interest. And- Is it- I'm sorry to interrupt you, but is the issue whether it's a financial interest or whether the personal motivations make the- are the cause the nexus and not the political opinion? The issue is for asylum whether a central reason is the political opinion as the motivation for the harm. And under withholding, it just has to be a reason. And while I do think that there is a central reason here, I think the board in its decision concedes that political opinion is at least a reason because the board says that Arash was primarily motivated by personal interest, which means there are other non-primary reasons, and one of those non-primary reasons are going against the besiege, going against the government. Zatabi's refusal to comply with government corruption. And so the board was wrong in finding no nexus under the withholding. I think also evidence is that these are the- this is the kind of situation that these asylum law cases regarding whistleblower status contemplate because you have Arash using the resources of his office against a powerless individual. And in the record, and I don't remember- I guess I'm still struggling with the protected ground has to be the political opinion or membership in the whistleblower proposed social group. And it just sounds like Arash may be abusing, and is abusing his power, but it's still to try to pressure Mr. Zatabi to falsely inflate the acreage of the property. So it still seems like the core is a financial one versus I'm going to pressure you and threaten you because you are a whistleblower or because you have a political opinion. Does that make any sense? I'm still struggling with why the record compels that conclusion. I think that the persecution of fair distribution is the refusal to comply. And the refusal to comply is his whistleblower status. So he doesn't have to say, I am a whistleblower, or Ms. Arash doesn't have to say, we're going to do this against you because you're whistleblowing. It's the refusal to comply that is in the whistleblower cases that the political opinion. And I don't think that this core, I think that the court is compelled to consider this threat of being against the government with the being refusing to comply corruption. I don't think you can divorce those two things. I guess I'm just struggling because the case that you rely on, was that Bagdasarian? Yes. Had much stronger facts. There were statements that we are doing, we are harming you because the person not only failed to comply with corruption, but then he organized massive protests of hundreds of people to protest the corruption. And there were all these statements by the abusive officials saying we're doing this to you because of your effectively opposition to the government. So it just seems a little bit different. Do you want to address that? In Bagdasarian, it was similarly the board is saying there's this personal financial interest. And when they are beating up Mr. Bagdasarian, they're saying you're going against General Hakobian. Interrogating Mr. Zatabi in this situation, I'll agree with your honor, we don't have this like very explicit, we are doing this to you because of this. But they're saying you're going against the government. We're going to disappear you and your family will never find you unless you do this thing for me. Which is similar to Bagdasarian, where it's unless you pay this bribe. And I think here that the kind of organization of protests isn't required, and so while Bagdasarian did organize the protests. He filed a complaint with a judge, he organized his fellow business owners to form an informal union to fight the extortion. He held, you know, rallies and strikes to publicize the corruption. I think at base, though, the law says the refusal to comply. And I think here, Mr. Zatabi did report everything to the police twice. And nothing happened. So it's not like he was keeping this quiet. He reported it to the police, and he reported the incidents that happened. Well, we have that line in Bagdasarian where we said, well, some of the harm that Bagdasarian experienced may have been motivated by the personal greed of General Hakobian. Substantial evidence does not support the BIA's determination that Bagdasarian was harmed for personal reasons alone. And you're saying that's this type of case. Some of it might be Arash's personal greed, but he was harmed for more for his refusal to go along with the way the government. Yes. Operated. Yes. Because Mr. Zatabi's going up against the government and refusing to correct the land price. And he is being—besieged officials are being used to force him to comply. And I think we have to agree that it is less egregious than Bagdasarian. He—I mean, but then again, Iran is—the circumstances of Iran are very different. I think that—I think there's substantial evidence here of the way the besiege operates and the way the Islamic Revolutionary Guard operates. This isn't just between two individuals. This is between an arm of the government that will come crashing down for his refusal to succeed to the demands. I'm struggling with the same kind of line drawing that Judge Koh raised. Is every refusal to comply with a request by the—a person of power going to trigger asylum? No. No. But in this case, you have a person of power arresting someone using other besieged military agents. Maybe to flip that, Your Honor, if—if there was interest, a personal interest furthered in a government official extorting somebody, that would not necessarily preclude a political opinion case. I think that this is a situation where you have a government that, as I say, will—will—is going to force compliance. And so Mr. Zatabi is refusing to do something based on his beliefs. And the government is forcing his compliance on penalty of death. And so I do think that this fits in within our political opinion framework. And I've gone—I'll reserve my 20 seconds. All right. Thank you. Thank you. Thank you. Mr. Engler? You're on mute. You need to unmute. I always have. I knew that was coming. My apologies. Yeah. May it please the Court, Micah Engler on behalf of the Attorney General of the United States. The Court should deny the petition for review in this case as petitioner did not demonstrate that the record compels a contrary conclusion to the agency's decision. I'll focus on the nexus issue as well because that is the crux of the issue in this case. Here petitioners presented two different protected grounds, but the record makes clear and substantial evidence supports the Board's decision that the reason petitioner was harmed, the reason that Arash—or Mr. A, as the agency notes—targeted petitioner was because Arash had a financial motivation. That was clearly why he targeted petitioner. He had a personal financial motivation in his land being overvalued by petitioner who was an appraiser of land for a bank. The evidence does not support that he was targeted because he was an alleged whistleblower or member of the particular social group proposed. And throughout the record, even petitioner's own testimony, he makes clear that all Arash wanted was for him to fix the appraisal. Everything comes back to petitioner fixing the appraisal, and if he fixes the appraisal, then he wouldn't have any issues. That's what the evidence indicates, and for that reason, the Board properly concluded that substantial evidence supports the finding that the harm experienced and feared was not on account of a protected ground. But what about for asylum? It just needs to be a reason, right? They say we agree with you on—I mean, I'm sorry—withholding. They say we agree with you on asylum. It's not a one central reason. You can't find the record compels that conclusion because there is this financial interest, and there's no evidence that Arash knew about the whistleblowing. There's no statements that that's why they want to harm him, unlike in Bagdasarian. But why couldn't it have been a reason for withholding? Yes, Your Honor, and the Board did conclude that it was not a reason, and I believe it's for all the reasons that have already been mentioned. There is no evidence that Arash even knew that Petitioner had reported the alleged—the bribe attempt to the police or to his supervisor, let alone that he cared about that. At no point does Arash or any of Arash's associates reach out to Petitioner and complain about alleged whistleblowing, or at no point does the record even indicate that he told them, hey, don't report this. Don't tell anybody about this. The only thing that the record indicates is he keeps saying, fix the appraisal. I want you to overvalue my property. Well, they threatened him. Exactly. They threatened him. They said the second visit, he went there, and there was Arash and five or six other people, and he indicates that he was told to fix the problem or we will do something, and that's a threat. Right? Yes, Your Honor, he did threaten him. The record makes clear that at least at one point he threatened him, but why did he threaten him? Why was he targeting him? To fix the appraisal. Well, it could be—I mean, it's both he wants him to fix the land, but also he's refusing to do so and telling his superiors when it's a government official who's acting correctly to—and then is retaliating against him, so he's doing the right thing civically. He's not lying, and that—but that is perceived by the government officials going against him. I mean, you could say, well, he's going against him personally, not in his government capacity, yet the retaliation and the threats come from the government. I do believe that he was going against him personally, but even aside from that, the question is why is—why is Arash targeting Petitioner? Is it because he went against him personally? Did he get offended and take this personally and said, you went against a member of the government, so now you're against the government? No. All Arash said was, I want you to fix—I want you to fix the appraisal, fix the issue involving the land. That's what this keeps coming back to. At no point is it indicated anything related to being a whistleblower or even being against the government. There's also evidence in the record, isn't there, that at the time Mr. Zatabi filed the police report, he didn't know who Arash was. He just thought he was just some corrupt person wanting him to inflate the acreage of property? Yes, Your Honor, it's not entirely clear, but it does seem that the only time—the first time Petitioner realized that Arash was a member of the Basiq was when he went in for questioning to the Basiq base. That was after both appraisals already. That was after a police report already, so he didn't even know that Arash was a member of the Basiq for most of these incidents and most of the record. At that visit, I mean, he was forced to go to the Basiq. He didn't just go to the Basiq. And then he was—Mr. Arash, he certainly knew Arash was part of the Basiq then, and then he informed him that he needed to fix the problem with the land, and if he didn't, he would face criminal charges and be destroyed so that his family would never find him. And then they later threatened him with punishment for being in a protest that he wasn't in. Your Honor, I do believe that they talked about the protest issue during that questioning. You're right. I mean, I think what Judge Rosenthal said is correct. This is very much line drawing, and, you know, the Sagan was a very egregious case. And I'm just wondering, maybe the distinction is he wasn't acting as a whistleblower as much as he was just doing his job as an appraiser and doing it honestly. So he wasn't political, even though what's interesting about this case is it's clearly the weight of the government was brought down on him for this seemingly nonpolitical act when he started out, but then, I don't know, maybe it became more political as the government forces got more involved and more punitive. And the question really is, where do you draw the line on this? Yes, Your Honor, it does start to get a little bit complicated, especially in this situation where you have this volunteer paramilitary organization where it's, even from the record, even from petitioner's testimony, it's really not entirely clear just how connected it is to the government, even though it does appear to be connected to the government. So this would be an especially difficult case maybe to make that line drawing decision, but I don't even think the facts of this case get us close to where the line would be drawn. This seems to be, perhaps he was abusing his power. I think that is a good way to phrase it, but an individual abusing his power to get a personal and financial interest, not a widespread government corruption scheme that petitioner was opposing and, like you said, starting unions and reporting to judges and doing all these things to push back on. Is that level of public protest required? I mean, what we have here is a guy who does go to the police, who has a series of unfortunate events happen to him that are serious events. He's in a hit-and-run accident. His tires are slashed. He's assaulted by people. He's warned to be careful. He files a police report. Nothing happens. And then he gets taken by two people who identify themselves as members of Basij's intelligence and taken to a place where he's interrogated and threatened. And then he moves far away and he continues to get threatening messages. What do we do with all that evidence? Sorry, my watch says I fell because I gestured too vigorously. I did not fall, thank you.  Yes, for the record. But I'm struggling with what you do with the context of all of that evidence. It doesn't have to be a widespread scheme of police corruption, but it does seem to be an incident of abuse of power by a corrupt public official against someone who is refusing to comply with a request from those in power, one of those in power, with the clear ability to carry out the threats. Yes, Your Honor, and the government is sympathetic to the facts of this case, but I think we need to go back to what the actual legal assessment is, and that is what was the motivation for that. What's the nexus here? That's what this case keeps coming back to. And he didn't target him for all those other things involving the government coming down on Petitioner. That's obviously a terrible thing to happen after the fact, but that's not why Petitioner was targeted. And even after all that comes down, the record consistently says that with all these people calling, the phone calls that Petitioner keeps getting, they don't say, hey, this is because you're against the government. Why did you do that? Or stop reporting us to the police or anything like that. They just keep saying, we need you to fix the land. How can you fix this appraisal? We need you to comply with a request, a demand, made by someone who is part of the government and had the backing or the ability to call on the resources of the government to back up the threat. So I'm troubled by the separation of personal motivation and abuse of power. I understand, Your Honor, but the record doesn't indicate that they said you've defied a request from a member of the Besiege, and so therefore, we're going to do X, Y, and Z. That wasn't their motivation, or at least the record doesn't indicate that was their motivation. And I think this case comes down to motivation. But there doesn't have to be an explicit statement that, by Mr. Zatabi, that I refused to comply with or engage in government corruption. And I told Commander Arash that that was the reason I didn't fix the report. And I'm struggling with, at what point do we find that there was a need for substantially more explicit statements of refusal? Would this go more towards the whistleblower claim or towards the particular social group claim and being against the government? I find it hard to separate those. I think we've classified whistleblower whenever someone acts as a whistleblower as a political opinion. So we don't require an additional social group. I think that's our case law. Is that correct? I'm pretty sure. Well, Mr. Zatabi proposed the whistleblower as his social group, right? As well as an additional particular social group. Yeah. What's the additional particular social group, if it's just whistleblower? People that have acted against the ranking member of the Viziege, which is directly against the Supreme Leader, hence against Khomeini and the Islamic Revolution. But there is a lot of overlap between the two. It is understanding that the analysis can get kind of jumbled. But the government's position is still that Arash was not motivated and did not harm Petitioner on account of either of those reasons, but rather it was his personal financial interest. So this case turns entirely on a factual question. Is that your position? The factual question of the persecutor's motivation, yes, Your Honor, which leads to the legal question of the nexus. But, again, those are also intertwined. Have you considered, or has anybody in the agency considered, whether Mr. Zatabi comes within the non-enforcement memoranda promulgated by DHS and ICE? I am not certain. Similar to the previous counsel, I was also just assigned to this case. So I am not certain. My apologies, Your Honor. Would you be amenable to that? I am happy to go back to my office and look into what communications have been had regarding that and whether that would be a possibility, but I'm not certain the status of that. Would you be willing to have this case sent to mediation in order to give you time to figure that out and let the agency figure that out? I think the government would be open to that, Your Honor. Okay. Because I don't see – I don't have everything in front of me right this minute, but I don't see that he's committed any crimes or, you know, is a threat to national security, but maybe, you know, there's something in your file. I don't know. So that would have to be looked at. Okay. The government would be open to that if the court decides to go in that direction. All right. Well, okay. I'm sorry. I've taken you over your time. Is there anything you want to add? No, Your Honor. If there are no further questions, the government requests that the court deny the petition for review. All right. Thank you. Thank you. You have a minute. Just to clarify, the grounds advanced by Mr. Zatabi, the whistleblower is the political opinion, so the court's correct, and then there was the separate PSG. I'm just curious why you need a separate PSG. I think that that was what the previous – that was the – you can have more than one theory, and I think – I agree there's a lot of overlap. I think that there is no level of public pro-trust requirement, and I think that de Servi-Eltscher is a – and I don't know that I pronounced that last name right – is instructional in this case because that was a case where a Haitian fisherman failed to pay the Haitian security forces money, a portion of his money, and it was this imputed anti-government sympathy. There was no public protest or organization. What case was that? De Servi-Eltscher. It is 840 F. 2nd, 723. It is a pre-Bagdasarian case, but I don't think that Bagdasarian overrules it at all. What was instructive in this case is the court looked at substantial evidence of the country conditions that Haiti is a kleptocracy, and that failing to pay the security forces have imputed anti-government sympathies to the people who refuse, so I think that that is similar here where we have Iran, and the country conditions talking about Iran's totalitarian, theocratic – we've got these religious police that are disappearing political dissidents, and here we have an official of that entity that is committing these human rights abuses, threatening to disappear somebody, and imputing those anti-governments. But look at Singh v. Barr, 935 F. 3rd, 822, 2019. There the petition was denied. The police arrested Daya Singh. Both men denied it. There was a shooting during the interrogation. They said they were going to file a case to see that their uniforms were removed. The officers retaliated. They beat them. They moved them from the police station. Singh never saw the other person again. Singh told the lawyers about this. They recorded the statement, sent it to higher officials in the Indian government. They faced reprisals. The Punjabi officers arrested him, forced him to recant his statement, and even in that instance it goes on and says that that isn't enough. So it's not just Bagdasarian, right? I mean Singh v. Barr has far stronger facts than Mr. Zatabi's, and the court in a published opinion there said it doesn't constitute. Your Honor, I disagree that Singh v. Barr has stronger facts than Mr. Zatabi because here we have the country conditions of Iran that are not present in the Singh case regarding the besiege, the corruption, and also in that case the imputed like you're going to be against the government and part of this political protest and disappeared. So I think that that's. . . Well, here the officer said, quote, and saying something against the police. So it's a little bit more explicit the motivation was a going against the police, whereas here that motivation is less clear. Well, I disagree because I think that it's going. . . You're going to be against the government, and it's not just going against the police. It's going against the supreme leader, again, the besiege. Then we have this record of people being disappeared and tortured for going against the government. So I respectfully disagree that I think this is distinguishable from Singh in that the country conditions are much different and that the court can look to the country conditions here as substantial evidence to prove nexus the same way it did in De Sere. Thank you. All right. Thank you very much, counsel. The topic, Mrs. Garland, will be submitted in this session of the court. It's adjourned for today. Thank you both for your excellent arguments. Thank you. All rise. This court for this session stands adjourned. Thank you.
judges: WARDLAW, KOH, Rosenthal